**In re Anonymous No. 23 D.B. 93**

Disciplinary Board Docket no. 23 D.B. 93.

WITHEREL, *Member,* October 21, 1994—

## I. HISTORY OF PROCEEDINGS

The Office of Disciplinary Counsel filed a petition for discipline in this matter on March 16, 1993.

On April 30, 1993 the matter was referred to Hearing Committee [    ], consisting of [    ], Esquire, Chair, and members [    ], Esquire, and [    ], Esquire,

Respondent filed her answer on May 18, 1993.

On July 8, 1993 the matter was reassigned to Hearing Committee [    ], now consisting of [    ], Esquire, Chair, and members [    ], Esquire, and [    ], Esquire.

A hearing was held on September 3, 1993.

Petitioner filed its brief to the Hearing Committee on December 3, 1993, and respondent filed her brief to the Hearing Committee on December 5, 1993.

On April 18, 1994 the Hearing Committee filed its report recommending that respondent be suspended from the practice of law for a period of one year; that the suspension be stayed; and that respondent be placed on probation for a period of one year subject to conditions.

Neither party filed exceptions to the Hearing Committee's report within the prescribed time.

The matter was adjudicated at the June 22, 1994 meeting of the board.

## II. FINDINGS OF FACT

The board, upon review of the findings of Hearing Committee [   ], and the evidence before it, both exhibits and testimony, adopts the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of Pennsylvania Rules of Disciplinary Enforcement, with power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in Commonwealth of Pennsylvania and to prosecute all provisions of the aforesaid rules.

(2) Respondent, [   ], was born in 1955 and was admitted to the practice of law in the Commonwealth of Pennsylvania in 1980. Respondent maintains an office for the private practice of law at [   ]. Respondent also serves as a part-time [A].

(3) Respondent was retained by [B], complainant, to represent complainant in a domestic relations case against complainant's then husband, [C]. (Stip. 3.)

(4) Respondent contacted complainant in June of 1991 and asked complainant to provide a key to the residence formerly occupied by both complainant and her husband in order to have the property reappraised, which key complainant provided. (Stip. 20.) Respondent did not have the reappraisal done. (Stip. 21.)

(5) In or about late June 1991, complainant asked respondent to bifurcate the divorce and property distribution matters. (Stip. 22.)

(6) On or about July 1, 1991, despite knowing that complainant was already divorced, respondent had complainant sign an affidavit under section 201(d) of the Pennsylvania Divorce Code. (Stip. 23.)

(7) On or about August 1, 1991, complainant contacted respondent to inquire about whether the divorce had been finalized. Respondent stated that the divorce decree had been entered on July 12, 1991, when in fact the relevant decree was dated September 10, 1990. After further conversation with complainant, respondent stated she would provide a copy of the decree. (Stip. 24.)

(8) Respondent created a document which appeared to be an authentic divorce decree dated July 12, 1991 with court seal, caption and signature of Judge [D] of the [    ] County Court of Common Pleas. (N.T. 48-49.) This document was not genuine. (N.T. 48.)

(9) Respondent had one of her employees deliver this document to complainant. (N.T. 49.)

(10) During the period that the misconduct occurred, respondent gave birth to two children who died shortly after birth. (N.T. 33-34, 38-39.)

(11) During the pregnancies respondent was physically very ill and exhausted. (N.T. 33.)

(12) The pregnancies and death of the children produced marital discord, which affected respondent's mental condition. (N.T. 40.)

(13) The death of the children resulted in severe emotional trauma which triggered depression in respondent. (N.T. 93.) Respondent testified that she should not have been practicing during this period due to her psychological condition. (N.T. 42, 45.)

(14) Respondent's mental condition was a causal factor in respondent's actions. (N.T. 100-101.)

(15) Respondent has undergone psychiatric treatment from Dr. [E] D.O., including mood elevating drugs. (N.T. 92.) The drug treatment ended after 18 weeks.

(N.T. 94.) The counseling contact is ongoing. (N.T. 56-57, 100.)

(16) Respondent has also dealt with her grief at the loss of her biologic children by adopting a child, and by joining a therapeutic group which aids grieving parents called [F]. (N.T. 58, 54.)

(17) Respondent turned over complainant's file to Attorney [G] in December 1991. Respondent did not remove any of the material showing the fabrication of the decree, while knowing he would find such material. (N.T. 51.)

(18) Respondent is remorseful about her misconduct. (N.T. 50.)

(19) Respondent has taken measures to insure adequate handling of her private caseload by limiting the number and kind of cases she accepts, and instituting practices such as communicating with open-file clients at least every two weeks. (N.T. 58, 60-61, 78.)

(20) Respondent has been very active in both the bar and the wider community. She has served on the [    ] committee of the bar association, including serving as chair. (N.T. 29.) She won the pro bono award for handling more assigned pro bono publico cases than any other lawyer in the local bar association for three years in a row. (N.T. 30.) Respondent has served as vice president of both the [    ] and the [    ]. (N.T. 29.) She has volunteered with the [    ] organization. (N.T. 30.) Respondent has taught in the paralegal studies program at both [    ] University and [    ], serving on the paralegal studies board for the [    ] program. (N.T. 30.)

(21) [H], former client and friend of respondent, testified that respondent is known in the [    ] community

as a truthful, honest, peaceful and law-abiding person. (N.T. 117.)

## III. CONCLUSIONS OF LAW

The board concludes that respondent has violated the following Rules of Professional Conduct:

(1) R.P.C. 1.3 through failure to act with reasonable diligence and promptness in representing complainant;

(2) R.P.C. 1.4(a) through failure to keep complainant informed about the status of the representation; and

(3) R.P.C. 8.4(c) through engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This case is a troubling one for all concerned. We begin by noting the nature of the misconduct which respondent admitted. After undertaking a domestic relations representation for complainant, the respondent did some initial work, but beginning about June 1990, allowed the matter to drift without attention on her part. Further, she did not keep the complainant informed as to important developments in the case, including an order requiring complainant to produce documents and a divorce decree. (N.T. 43.)

This neglect was compounded by lying to the client. Respondent continued to conceal from complainant the fact that complainant was in fact divorced, by respondent's actions which suggested the opposite. For example, respondent prepared an affidavit under section 201(d) of the Divorce Code, (Stip. 23) which document is only used where one spouse is preparing to ask for a divorce decree. When the client inquired after approximately a month as to the status of the divorce,

respondent untruthfully told her that the decree was entered on July 12, 1991. (Stip. 24.)

After complainant asked for a copy of the decree, respondent presented a document meant to appear to be the one supposedly entered on July 12. (Stip. 28, N.T. 48.) This document was then delivered to the client. (Stip. 25, N.T. 49.)

The type of conduct in this matter has, under different circumstances, evoked serious sanctions from the disciplinary system. *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 83, 619 A.2d 1054, 1056 (1993).

Nevertheless, if the misconduct in this matter was serious, the mitigation presented was also very great. During the period in which this misbehavior took place, respondent suffered great personal tragedy, along with physical and mental illness. After pregnancies in both 1990 and 1991 which were characterized by physical suffering, such as difficulty breathing and continual pain, respondent gave birth each time to critically ill infants who died within days of birth. (N.T. 32, 33, 38-39.)

Respondent presented unchallenged expert testimony by [E], D.O., that these traumatic events caused respondent to develop deep depression, which interfered markedly with respondent's ability to perform her duties. (N.T. 92.) Respondent herself testified that she now realizes that she should not have practiced at all during this period. (N.T. 45.) The physician, an expert in psychiatry, credibly testified that respondent's misconduct was caused in large part if not totally by her mental and emotional state. (N.T. 100.)

The Pennsylvania Supreme Court has recognized that psychological impairment is a factor in mitigation of attorney misconduct where a causal link can be shown between the condition and the conduct. *Office of Dis-*

*ciplinary Counsel v. Braun,* 520 Pa. 157, 161, 553 A.2d 894, 895-96 (1989). In this case, the misconduct occurred following the beginning of the first pregnancy and reached its apex prior to the death of the second child, supporting the doctor's testimony, and thus permitting the inference that absent the psychological stress on the respondent, the misconduct would not have occurred. However, this mitigating factor does not stand alone.

Respondent has taken steps to make certain that the conditions which led to the misconduct in this representation will not recur. Dr. [E] has treated her medically for the depression, involving treatment with drugs, now concluded, and counseling. (N.T. 92, 98.) She has also joined a therapeutic group called [F] which helps parents who have lost infants. (N.T. 54.) Dr. [E] also noted that respondent and her husband, through the adoption of a child, also reduced the negative feelings respondent developed through the loss of the two children. (N.T. 98-99.)

With regard to her practice, respondent has made changes in procedures and caseload. With her assumption of the part-time [A], respondent has eliminated all [   ] criminal cases from her practice and refused to take any Pennsylvania state cases brought through investigations made by the [   ] task force which works in conjunction with the United States Attorney's office. (N.T. 32.) She has reduced her caseload dramatically, and her staff now consists of one part-time secretary, where she formerly employed four persons, two full-time. (N.T. 58, 59.) Respondent's private practice consumes only 25 percent of her time. (N.T. 58.)

Furthermore, she has addressed the client communication problem. Respondent has directed her secretary to check every active file every two weeks. (N.T. 59-60.)

Even if no work has been done, or is needed on that case, the client is notified of that and encouraged to call with any questions. (N.T. 60.)

The evidence before the board also shows that respondent understands the seriousness of her misconduct in this case. She exhibited remorse while testifying and characterized the fabrication of the decree by saying "it was immoral, it was illegal and it was stupid." (N.T. 50.) Even more importantly, she understands the importance of making sure that clients' rights are not prejudiced by a failure to take action. (N.T. 61-62.) In addition, the board notes that respondent did not compound her error by attempting to conceal her actions from the attorney who eventually took over complainant's representation. (N.T. 51-52.) All of the above reinforces the conclusion that respondent is unlikely to repeat the misconduct in the future.

In addition to the factors specific to the psychological condition and her office procedures, the board notes the following as supporting reasons to impose a lesser sanction in this case. Respondent has been very involved with her local bar association, serving as chairperson of the [    ] committee, among other roles. She has demonstrated a commitment to pro bono publico service, which was recognized by the [    ] Bar through awarding respondent the pro bono award for handling more such cases than any other practitioner in the area, three years in a row. Her voluntary efforts go beyond pro bono work. Respondent is also active with the [    ], and the [    ].

In considering prior cases relating to discipline in situations similar to the present one, striking resemblances can be seen in the above cited case of *Office of Disciplinary Counsel v. Holston. Holston* similarly involved a neglect charge coupled with a forged divorce

decree. The respondent in *Holston* was disbarred. *Id.* at 79, 619 A.2d at 1054. However, there are also striking differences. Holston presented no medical testimony showing impairment leading to the misconduct. Further, when confronted by a judge about the forged decree, Holston denied any knowledge of its origin. This lying to the court was viewed by the Supreme Court as very grave misconduct, calling "for the most severe sanction." *Id.* at 83, 619 A.2d at 1056. This element of "callous disregard for the very integrity of the judicial process," *id.,* is missing in the present matter. Thus, *Holston* is not an appropriate case to utilize in determining appropriate discipline in this matter.

Furthermore, to do so would be contrary to the spirit of the disciplinary process, which seeks to view each case on its own facts, and then determine the continued fitness of the attorney to practice law. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 281, 472 A.2d 186, 190 (1983). This approach produced the *Braun* decision and the recognition of psychiatric difficulties as mitigation. *Braun, supra* at 161, 553 A.2d at 895-96. Part of the misconduct shown in *Braun* was forgery of the executrix' signature, and the sanction imposed was suspension. *Id.*

Among the body of cases where the presence of mitigation convincingly indicated the appropriateness of a lesser sanction, two decisions in particular provide illumination for this matter. First, *In re Anonymous No. 61 D.B. 82,* 29 D.&C.3d 534 (1983), involved a township solicitor who forged the signatures of the township supervisors in the course of his duties. The board noted in mitigation the attorney's unblemished record, his candid concession of wrongdoing, his family difficulties at the time of the misconduct, his reimbursement of the township, and the lack of personal gain. The Supreme Court imposed public censure.

Second, the respondent in *In re Anonymous No. 77 D.B. 83,* 32 D.&C.3d 507 (1984), filed false pleadings in another state in an attempt to escape the consequences of losing money at trading commodities. Despite the serious nature of this misconduct, the board considered the sincere contrition, the youth and lack of prior disciplinary record of the respondent and ordered a private reprimand as a sanction. Both of these cases suggest that the outcome in the present matter should be influenced by the extremity of the personal circumstances respondent suffered at the time of the misconduct.

The board therefore determines that due to the significant mitigating circumstances present in this case argue for the imposition of private discipline. However, the board also takes into account the prior informal admonition that respondent has received, involving two separate complaints. Both involved failing to communicate with clients and failing to take necessary action in their respective cases, in violation of Pa.R.P.C. 1.3 and 1.4(a). In light of this prior history of discipline, the board concludes that private reprimand is appropriate and necessary to underscore the importance of the obligations which respondent has failed to honor.

## V. DETERMINATION

The Disciplinary Board of the Supreme Court of Pennsylvania determines that respondent [    ] shall receive a private reprimand. Costs in this matter are to be paid by the respondent.

Mr. Friedman recused himself.

Mr. Kerns, Ms. Lieber, and Ms. McGivern did not participate in the adjudication of this matter.

350

## ORDER

And now, October 21, 1994, upon consideration of the report and recommendation of Hearing Committee [    ] filed April 18, 1994; it is hereby ordered that the said [respondent] of [    ] County be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement.

Costs are to be paid by the respondent.